IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No.: 5:22-cv-060

| | |
|---|---|
| SHERRY L. UNDERWOOD, | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| COMMUNITY HEALTH SYSTEMS INC., and COMMUNITY HEALTH SYSTEMS PROFESSIONAL SERVICES CORPORATION, LLC, d/b/a DAVIS REGIONAL MEDICAL HOSPITAL, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

The Plaintiff, Sherry L. Underwood, being duly sworn, and complaining of the Defendants, Community Health Systems Inc., and Community Health Systems Professional Services Corporation d/b/a Davis Regional Medical Hospital, avers and says the following:

## I.
## NATURE OF ACTION

This civil action arises from violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter referred to as the "ADEA"), the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA"), and state law. The Plaintiff, Ms. Underwood, alleges that the Defendants, Community Health Systems Inc. and Community Health Systems Professional Services Corporation, LLC, d/b/a Davis Regional Medical Hospital (or collectively, "the Defendants"), terminated her employment as its Director of Health Information Management at Davis Regional Medical Hospital because of her age and because of

1

her request for intermittent family medical leave to care for her elderly mother in violation of the ADEA and the FMLA and in violation of the state public policies set forth in N.C. Gen. Stat. §143-422.1. Ms. Underwood seeks appropriate equitable and monetary relief in the form of present and future lost wages, compensatory damages for emotional distress, and liquidated and/or punitive damages as provided by federal and state law.

## II.
## JURISDICTIONAL STATEMENT& PARTIES

1. Ms. Underwood is an adult citizen and resident of Mecklenburg County, North Carolina. At all times relevant to this Complaint, Ms. Underwood was a member of the class protected by the ADEA and was an individual who applied for and was eligible to receive the benefits and protections of the FMLA. Additionally, at all times relevant to this Complaint, Ms. Underwood was employed by the Defendants at their hospital facility located at 218 Old Mocksville Road, Statesville, Iredell County, North Carolina.

2. The Defendant, Community Health Systems, Inc., was, and continues to be a Delaware corporation authorized to conduct and is conducting business within the State of North Carolina. Defendant Community Health Systems, Inc., is one of this nation's leading for-profit operators of general acute care hospitals. Its affiliates own, operate or lease eighty-three hospitals across the United States. Defendant Community Health Systems, Inc. maintains its headquarters in Franklin, Tennessee.

3. The Defendant, Community Health Systems Professional Services Corporation, LLC, d/b/a Davis Regional Medical Hospital, is an affiliate of Defendant Community Health Systems, Inc. Based upon information and belief, Defendant Community Health Systems Professional Services Corporation, LLC, is a Tennessee limited liability company authorized to conduct and is conducting business within the State of North Carolina.

4. At all times relevant herein, the Defendants were "joint employers" or were acting in concert as an "integrated enterprise," inasmuch as they exercised substantial control over the daily responsibilities and tasks assigned to Ms. Underwood, directed her work activities, and set the terms and conditions of her employment with them. Additionally, the corporate Defendants were engaged in a common business enterprise, shared a common business location and at all times shared and continue to share common ownership and control.

5. At all times relevant herein, the Defendants were, and continue to be an "employer" under federal and state law in that it is engaged in commerce and/or an activity or industry affecting commerce and employs twenty (20) or more employees for each working day during each of twenty (20) or more calendar workweeks in this the current and/or preceding calendar year. Defendants are "covered employers" as that term is defined under the FMLA.

6. This Court has jurisdiction over the parties and the subject matter of this Complaint.

7. All procedural prerequisites to the institution of this action have been fulfilled.

### III.
### STATEMENT OF FACTS

8. The Defendants hired Ms. Underwood during 2014 as its Director of Health Information Management (or "DHIM") and Facility Privacy Officer at Davis Regional Medical Hospital. At the time she accepted the position as the DHIM, Ms. Underwood had over two decades of relevant experience in Health Information Management, healthcare revenue cycle operations and healthcare sales. In addition, Ms. Underwood was a Registered Health Information Technician, having received her certification in 1985.

9. Throughout her employment with Defendants, Ms. Underwood received positive reviews and feedback from her superiors and had never been a recipient of any verbal or written warnings regarding her work performance or workplace conduct. For instance, during the second quarter

of 2016, Ms. Underwood was awarded Leader of the Quarter for outstanding professionalism and for her positive attitude, as well as for her willingness to help others and ongoing desire to improve quality services.

10. Ms. Underwood worked throughout the COVID-19 pandemic and worked extremely hard to reduce turn-around times within the HIM Department. During 2020, Ms. Underwood was instrumental in converting the HIM in-house scanning process and for hiring competent technicians to scan confidential healthcare information into the electronic medical system.

11. On or about October 21, 2020, Ms. Underwood applied for intermittent leave to care for her elderly mother's chronic medical needs. At that time, Ms. Underwood's mother was living with her in North Carolina and was receiving medical treatment and care at Davis Regional for colon cancer and treatment of an infection. Ms. Underwood was the sole caregiver for her mother in North Carolina.

12. In or about late January 2021, Ms. Underwood met with Hugh Tobin, former CEO of Davis Regional and Matthew Littlejohn, Defendants' new Chief Operating Officer. During this meeting, neither Mr. Tobin nor Mr. Littlejohn mentioned any planned reductions in staffing, nor did they indicate that the Health Information Management division at Davis Regional was performing poorly. To the contrary, both Mr. Tobin and Mr. Littlejohn expressed their opinion to Ms. Underwood that they believed her department was "trending in the right direction."

13. On February 7, 2021, however, Ms. Underwood attended a conference call with Mr. Tobin, the Chief Financial Officer of Defendants' affiliate hospital, Lake Norman Regional Hospital, and Jessica Krell, DHIM at Lake Norman. During this conference call, Mr. Tobin suggested that Defendants could reduce their costs by eliminating all scan tech positions within Davis' HIM department and outsourcing those duties to the HIM department at Lake Norman

4

Case 5:22-cv-00060-KDB-DSC   Document 1   Filed 05/18/22   Page 4 of 12

Regional Hospital. Ms. Krell stated that she was in favor of this suggestion. In response to Mr. Tobin's suggestion, Ms. Underwood voiced concern that outsourcing could potentially cause HIPPA and/privacy issues with confidential patient healthcare information. No consensus, however, was reached in the meeting regarding the elimination of any scan tech positions at Davis Regional.

14. On February 12, 2021, while she was on pre-approved PTO, Mr. Tobin called Ms. Underwood to request that she come to work on that date to meet with him. Ms. Underwood told Mr. Tobin that she would meet with him. In response, Mr. Tobin told Ms. Underwood to bring her computer with her.

15. Upon her arrival to the meeting with Mr. Tobin on February 12, 2021, Ms. Underwood was informed that her employment as DHIM would be terminated due to an alleged position elimination. Ms. Underwood was also informed at that time that the HIM Department at Davis Regional would be combined with the HIM Department at Lake Norman Regional Hospital. Based upon information and belief, Ms. Underwood's position was the only position that was eliminated within the HIM Departments for Davis Regional and Lake Norman Regional Medical Hospitals.

16. Immediately following her February 12, 2021 meeting with Mr. Tobin, Ms. Underwood learned that Ms. Krell had been retained by Defendants, and that Ms. Krell had assumed responsibility over the combined HIM Departments at Davis Regional and Lake Norman Regional hospitals.

17. Ms. Krell is substantially younger than Ms. Underwood and had less experience and less tenure in the role of DHIM at Lake Norman Regional Medical Hospital than Ms. Underwood. Furthermore, during 2015, Ms. Underwood temporarily held responsibility for the HIM

5

Departments at both Davis Regional and Lake Norman Regional hospitals. Prior to her discharge, Defendants never advised Ms. Underwood that she was unqualified to hold the DHIM position or that her skill set for the position was deficient in any way.

18. Ms. Underwood was more qualified to hold the position of DHIM over the combined HIM departments at Davis Regional and Lake Norman Regional hospitals than Ms. Krell.

19. Prior to the termination of her employment, Ms. Krell verbally threatened to take over Ms. Underwood's job as DHIM at Davis Regional. On one occasion, Ms. Krell told Ms. Underwood that she would have her job because she believed Ms. Underwood was "about to retire." On another occasion during 2020, Ms. Krell insisted that all of Davis Regional's medical records should be scanned at Lake Norman Regional. Because of the privacy risk involved in transmitting medical and psychiatric records between the two hospitals, Ms. Underwood notified Dana Hitchcock, Defendant's Regional HIM Director and complained. Ms. Hitchcock responded by telling Ms. Underwood that she would tell Ms. Krell to "stay in her own lane," especially since many of the scan techs at Lake Norma Regional Hospital were out with COVID at the time and could not take on any more work.

20. Defendants retained Ms. Krell and eliminated Ms. Underwood's position because of her age and because of her need for intermittent FMLA leave to attend to her mother's needs.

21. Following the termination of her employment, Ms. Underwood struggled to locate alternate employment comparable to her employment with Defendants. Ultimately, Ms. Underwood had to move her mother to a nursing home in West Virginia because she was unable to afford to continue in-home care for her mother.

22. Eventually, Ms. Underwood located employment in West Virginia. Because she was not yet eligible to receive FMLA with her new employer, Ms. Underwood was unable to attend to

her mother's care and could not be with her when she passed away.

23. In addition to the upheaval caused by the abrupt termination of her employment with Defendants, Ms. Underwood suffered and continues to suffer from depression and anxiety for which she has sought medical treatment.

24. On April 23, 2021, Ms. Underwood filed a charge of discrimination against the Defendants with the U.S. Equal Employment Opportunity Commission, styled, *"Sherry Underwood v. Davis Regional Medical Center,"* EEOC Charge No. 430-2021-01428. A copy of EEOC Charge No. 430-2021-01428 has been attached hereto as "**Exhibit 1**."

25. On March 2, 2022, the U.S. Equal Employment Opportunity Commission issued its Determination and Notice of Rights to Ms. Underwood in the matter of EEOC Charge No. 430-2021-01428. A copy of the EEOC's Determination and Notice of Rights has been attached hereto as "**Exhibit 2**."

26. This Complaint has been timely filed within the applicable statute of limitations.

### FIRST CLAIM FOR RELIEF
**(Age Discrimination - Violation of the ADEA)**

27. Ms. Underwood realleges and incorporates by reference herein Paragraphs 1 through 26 of this Complaint.

28. The ADEA makes it unlawful for an employer to discharge any individual because of such individual's age. Further, the ADEA makes it unlawful for an employer to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities because of such individual's age. *29 U.S.C. § 623(a).*

29. Defendants terminated the employment of Ms. Underwood because of her age. Further, Defendants failed to consider Ms. Underwood for the position of Director of the combined HIM Departments of Davis Regional and Lake Norman Regional hospitals and refused to allow her to

7

Case 5:22-cv-00060-KDB-DSC   Document 1   Filed 05/18/22   Page 7 of 12

apply for the newly created position because of her age. Instead, Defendants selected and retained a substantially younger, less qualified employee to assume the Director position of the combined HIM Departments of Davis Regional and Lake Norman Regional hospitals.

30. Ms. Underwood is a member of a class protected by the ADEA and she was meeting the reasonable expectations of her employers as the DHIM of Davis Regional at the time of her termination of employment. She was never advised that she was not qualified to hold the position of DHIM or that her skill set made her unqualified to hold the position of DHIM over the combined HIM departments of Davis Regional and Lake Norman Regional hospitals.

31. As a direct and proximate result of Defendants' acts and omissions, Ms. Underwood suffers, and continues to suffer present and future pecuniary damages, including, but not limited to loss of wages and other benefits. Accordingly, Ms. Underwood is entitled to have recover of Defendants back pay, front pay, and other consequential monetary damages in an amount to be proved at trial in excess of Seventy-Five Thousand Dollars ($75,000.00).

32. Defendants' acts and omissions were willful and intentional and have been committed with malice and/or a reckless indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to have and recover of Defendant liquidated damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CLAIM FOR RELIEF
(Wrongful Discharge in Violation of State Public Policy)

33. Ms. Underwood realleges and incorporates by reference hereto Paragraphs 1 through 32 of this Complaint.

34. The North Carolina Equal Employment Practices Act provides that "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and

8

Case 5:22-cv-00060-KDB-DSC   Document 1   Filed 05/18/22   Page 8 of 12

hold employment without discrimination or abridgement on account of . . . age . . . by employers which regularly employ 15 or more employees." *N.C. Gen. Stat. §143-422.1.*

35. Defendants terminated the employment of Ms. Underwood because of her age.

36. The termination of Ms. Underwood's employment by the Defendants constitutes a wrongful discharge in violation of North Carolina public policy.

37. As a direct and proximate result of Defendants' actions, Ms. Underwood suffers, and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Ms. Underwood has sustained, as a direct and proximate result of Defendants' actions, damages in the form of emotional distress, including, but not limited to humiliation, embarrassment, loss of professional standing, sleeplessness, anxiety, and depression. Accordingly, Ms. Underwood is entitled to have recover of Defendants back pay, front pay, and compensatory damages in an amount to be proved at trial in excess of Seventy-Five Thousand Dollars ($75,000.00).

38. Defendants' acts were willful and intentional and have been committed with malice and/or a reckless indifference to Ms. Underwood's state-protected rights. Accordingly, Ms. Underwood is entitled to have and recover of Defendants punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

**THIRD CLAIM FOR RELIEF**
**(Violation of the FMLA)**

39. Ms. Underwood realleges and incorporates by reference hereto Paragraphs 1 through 38 of this Complaint.

40. Section 105(a) of the FMLA makes it unlawful for any employer to interfere with or retaliate against any employee for exercising any of his or her rights under the statute. *29 C.F.R. §825.220(c)*.

41. Defendants interfered with and retaliated against Ms. Underwood because she exercised or attempted to exercise her rights under the FMLA. Further, Defendants treated the exercise of her rights under the FMLA as a negative factor in its decision to terminate Ms. Underwood's employment. Defendants failed to consider Ms. Underwood for the position of Director of the combined HIM Departments of Davis Regional and Lake Norman Regional hospitals and refused to allow her to apply for the newly created position because she exercised her rights under the FMLA. Instead, Defendants selected and retained a less qualified employee to assume the Director position of the combined HIM Departments of Davis Regional and Lake Norman Regional hospitals.

42. At all times relevant to this Complaint, Ms. Underwood was meeting the reasonable expectations of her employers as the DHIM of Davis Regional. She was never advised that she was not qualified to hold the position of DHIM or that her skill set made her unqualified to hold the position of DHIM over the combined HIM departments of Davis Regional and Lake Norman Regional hospitals.

43. As a direct and proximate result of Defendants' acts and omissions, Ms. Underwood suffers, and continues to suffer present and future pecuniary damages, including, but not limited to loss of wages and other benefits. Accordingly, Ms. Underwood is entitled to have and recover of Defendants back pay, front pay, and other consequential monetary damages in an amount to be proved at trial in excess of Seventy-Five Thousand Dollars ($75,000.00).

44.    Defendants' acts and omissions were willful and intentional and have been committed with malice and/or a reckless indifference to Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to have and recover of Defendants liquidated damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

## PRAYER FOR RELIEF

Wherefore, the Plaintiff, Sherry L. Underwood respectfully requests the Court to:

A.  Enter judgment in her favor and grant a permanent injunction enjoining the Defendants from engaging in unlawful employment practices, including those practices which violate the ADEA, the FMLA, and state public policy.

B.  Order the Defendants to make Ms. Underwood whole by providing her with equitable relief and monetary damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) for the loss of present and future lost wages and other benefits, as well as for her emotional distress, anxiety, and humiliation caused by the acts of the Defendants.

C.  Order the Defendants to pay to Ms. Underwood liquidated and/or punitive damages as provided by federal and state law in amounts to be proved at trial exceeding Seventy-Five Thousand Dollars ($75,000.00).

D.  Award Ms. Underwood her reasonable costs and attorney's fees incurred in this action as provided by federal and state law.

E.  Grant such further and different relief to Ms. Underwood as the Court deems necessary and proper under the circumstances.

## JURY TRIAL DEMANDED

The Plaintiff, Sherry L. Underwood, demands a jury trial regarding the matters alleged herein.

This the 18th day of May, 2022.

/s/ Jenny L. Sharpe
Jenny L. Sharpe, Esq.
Attorney for Plaintiff
N.C. State Bar No. 13698

**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC  28277
Telephone: (704) 944-3272
Facsimile:  (704) 944-3201
Email: sharpeattorney@gmail.com